UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SMOTHERED COVERED, L.L.C.                CIVIL ACTION

VERSUS                                    NO. 22-5132

WH CAPITAL, L.LC., *et al.*               SECTION M (5)

## ORDER & REASONS

Before the Court is a motion to strike plaintiff's jury demand filed by defendants WH Capital, L.L.C. ("WH") and Waffle House, Inc. ("WHI") (together, "Defendants"),[1] which plaintiff Smothered Covered, LLC ("Plaintiff") opposes,[2] and Defendants reply in further support of the motion.[3] Also before the Court are the parties' cross-motions for summary judgment,[4] to which each side responds in opposition,[5] and then replies in further support of their respective motions.[6] And further before the Court are Defendants' two motions *in limine* to exclude Plaintiff's experts Jack Eglé (commercial real estate) and Robbie Poche (damages),[7] which Plaintiff opposes,[8] and Defendants reply in further support thereof.[9] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons, granting Defendants' motion to strike Plaintiff's jury demand and denying the motions for summary judgment and motions *in limine*.

---

[1] R. Doc. 107.
[2] R. Doc. 131.
[3] R. Doc. 138.
[4] R. Docs. 111; 117.  Plaintiff's motion seeks partial summary judgment as to its breach-of-contract claim only.  R. Doc. 111.
[5] R. Docs. 132; 134.
[6] R. Docs. 143; 145.
[7] R. Docs. 113; 115.
[8] R. Docs. 133; 135.
[9] R. Docs. 137; 142.

I.  **BACKGROUND**

This case concerns a commercial real estate transaction gone awry.  The property at issue operated as a Waffle House restaurant in New Orleans, Louisiana, until it was closed on March 31, 2020.[10]  On August 10, 2021, WHI and Federated Historic Holdings, L.L.C. ("Federated") entered into the original Real Estate Sales Agreement for Federated to buy the property and its improvements and fixtures, which agreement was amended several times thereafter (collectively, the "RESA").[11]  The final amendment substituted WH for WHI as the correct owner (seller) of the property.[12]  On March 15, 2022, Federated assigned and transferred to Plaintiff, a related entity, its rights, title, and interest under the RESA.[13]  That same day, Plaintiff asked Defendants for access to inspect the property, but the security code provided by Defendants did not work.[14]  On the next day, March 16, 2022, Plaintiff and WHI closed on the sale.[15]  When Plaintiff took possession of the property, it discovered that Defendants had removed all "furniture, fixtures, equipment, and other building components."[16]  On November 3, 2022, Plaintiff filed this suit in state court against WH, alleging that the removal of the fixtures and other building components constituted a breach of the contract, fraud, and violations of the Louisiana Unfair Trade Practices Act ("LUTPA").[17]  Plaintiff requested a jury trial.[18]

WH removed the suit to this Court, invoking diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.[19]  Plaintiff then filed an amended complaint, adding WHI as a defendant,

---

[10] R. Doc. 107-1 at 2.
[11] *Id.* at 1-2; *see* R. Doc. 117-10.
[12] R. Doc. 117-10 at 28-29.
[13] R. Doc. 14 at 2; *see* R. Docs. 117-6; 117-7; 117-26.
[14] R. Doc. 14 at 2-3.
[15] *Id*. at 3.
[16] *Id.*
[17] R. Doc. 1-1 at 4-6.
[18] *Id.* at 6.
[19] R. Doc. 1 at 1.

asserting the same claims, and again requesting a jury trial.[20] In their answer, Defendants objected to Plaintiff's jury demand, stating that Plaintiff, as Federated's assignee, waived its right to a jury in the RESA.[21]

## II.    LAW & ANALYSIS

### A. Defendants' Motion to Strike Plaintiff's Jury Demand

Defendants move to strike Plaintiff's jury demand, arguing that Plaintiff, as Federated's assignee, contractually waived the right to a jury trial.[22] Paragraph 18(K) of the RESA states:

> (K)  Applicable Law; Venue: Waiver of Trial by Jury.  This Agreement shall be construed and enforced in accordance with the laws of the State of Louisiana, and the parties agree that in any dispute jurisdiction and venue shall be in the courts of Louisiana, County of Orleans, and the parties irrevocably consent to the jurisdiction and venue of such courts.  The parties hereby expressly waive any right to trial by jury of any claim, demand, action or proceeding arising under this Agreement or the transactions related hereto or thereto, in each case whether now existing or hereafter arising; the parties hereby agree that any such claim, demand, action or proceeding shall be decided by a court trial without a jury.[23]

Defendants argue that, "[a]s Federated's assignee, Plaintiff stands in Federated's shoes, has no greater rights than Federated and thus has no right to request a trial by jury against Defendants."[24] Defendants point out that courts have honored contractual jury waivers, and the factors established by the Fifth Circuit in *Pizza Hut L.L.C. v. Pandya*, 79 F.4th 535, 540 (5th Cir. 2023), for making this determination are satisfied here.[25]

In opposition, Plaintiff argues that only its breach-of-contract claim for the RESA is subject to the jury waiver.[26] According to Plaintiff, the jury waiver clause did not encompass or envision its claims for breach-of-contract as to the post-RESA act of cash sale, fraud, or LUTPA

---

[20] R. Doc. 14 at 1-6.
[21] R. Doc. 23 at 2, 13-14, 23.
[22] R. Doc. 107.
[23] R. Doc. 117-10 at 9.
[24] R. Doc. 107-1 at 2, 4, 8-10.
[25] *Id*. at 4-8.
[26] R. Doc. 131 at 1, 4-5, 8-12.

3

violations.[27]  Plaintiff contends that the words "'arising under this Agreement' [in the RESA] should not be read to include any of the claims related to Defendants['] breach of the [a]ct of [c]ash [s]ale," nor should it apply to their separate tort claims for fraud and LUTPA violations.[28]  Plaintiff also argues that Defendants should be estopped from seeking to enforce the jury waiver at this juncture because they acquiesced in setting the trial before a jury at three separate scheduling conferences and have taken the position that the RESA is inapplicable to the litigation.[29]  Plaintiff suggests that the Court bifurcate the trial to allow the breach-of-contract claims to proceed before the court and the fraud and LUTPA claims before a jury.[30]

In their reply, Defendants insist that they preserved their right to bring a motion to strike by objecting to Plaintiff's jury demand in their answer, so the motion is neither a surprise nor a change in legal position.[31]  Defendants also argue that paragraph 18(K) of the RESA applies to Plaintiff's claims for breach of the act of cash sale, fraud, and LUTPA violations because the agreement and alleged conduct underlying those claims "originate from, have their origin in, grow out of, flow from and are incident to, or have a connection with the [o]riginal RESA and its amendments."[32]

The Seventh Amendment to the Constitution of the United States preserves the right to a jury trial in civil suits.  U.S. Const. amend. VII; *see also* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution – or as provided by a federal statute – is preserved to the parties involved.").  However, the right to a jury trial can be waived by prior written agreement of the parties.  *K.M.C. Co.. v. Irving Tr. Co.*, 757 F.2d 752, 755 (6th

---

[27] *Id.*
[28] *Id.* at 9-12 (quotation at 9).
[29] *Id.* at 2-8.
[30] *Id.* at 12.
[31] R. Doc. 138 at 1-6.
[32] *Id.* at 6-8 (quotation at 6).

4

Cir. 1985) (collecting cases); *Pizza Hut*, 79 F.4th at 540-41.  A written agreement waiving the right to a jury trial is enforceable if the waiver was knowing and voluntary.  *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998); *Pizza Hut*, 79 F.4th at 541.  Courts consider the following non-exhaustive factors to determine whether, under the totality of the circumstances, a pre-dispute contractual jury waiver was made knowingly and voluntarily: "(1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver." *Pizza Hut*, 79 F.4th at 544 (quotation omitted).  And some courts within the Fifth Circuit "also consider whether the party was represented by counsel." *Id.*

Plaintiff does not dispute that the jury waiver in the RESA was knowing and voluntary.  Indeed, Plaintiff concedes that the waiver applies to its breach-of-contract claim concerning the RESA.  Thus, there is no need to analyze the foregoing factors here.

Plaintiff, however, disputes that the jury waiver applies to its other three claims because, according to Plaintiff, those claims do not "arise under" the RESA.  Plaintiff is incorrect.  The jury waiver in paragraph 18(K) of the RESA is broadly written to encompass "any claim, demand, action or proceeding arising under this Agreement [*i.e.*, the RESA] or the transactions related hereto or thereto, in each case whether now existing or hereafter arising."[33]  The Fifth Circuit has held that the phrase "arising out of" – a term virtually synonymous with the RESA's phrase "arising under" – is "ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to, or having connection with.'" *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 524-25 (5th Cir. 2006)

---

[33] R. Doc. 117-10 at 9.

(quotation omitted).[34] Here, Plaintiff's claims for breach of the cash sale, fraud, and LUTPA violations "arise under" the RESA because the transactions alleged to constitute the actionable conduct – that is, the cash sale and the representations concerning the property sold – had their origin in and grew out of the RESA. The RESA is a real estate purchase agreement governing the same property that is the subject of the cash sale and the related conduct said to give rise to the fraud and LUTPA claims. In other words, Plaintiff's claims for breach of the cash sale agreement, fraud, and LUTPA violations would not have come into existence without the RESA. In particular, each of those claims relates to Defendants' removal of the "furniture, fixtures, equipment and other building components" from the property which Plaintiff says were to be conveyed with the property pursuant to the RESA and its related transactions. Thus, the jury waiver applies to those claims as well.

Moreover, Defendants' motion to strike the jury comes as no surprise. From the time they filed their answer, Defendants have consistently maintained that the jury waiver applies to all of Plaintiff's claims. That a date for a jury trial was set as part of the Court's scheduling conference does not negate or undermine the Defendants' then-preserved contractual right to enforce the waiver of the jury demand.

Accordingly, Defendants' motion to strike Plaintiff's jury demand is granted.

**B. Cross-Motions for Summary Judgment**

Plaintiff moves for partial summary judgment on its breach-of-contract claim, arguing that Defendants breached the RESA by removing from the property presale "fixtures" that Plaintiff says were supposed to remain.[35] Defendants respond that (1) Plaintiff has no standing to bring a

---

[34] All be it in an insurance context, the Louisiana supreme court has defined the phrase "arising out of" in the same way and considers the words "to be general and comprehensive terms which should be construed liberally to extend coverage broadly." *Bernard v. Ellis*, 111 So. 3d 995, 1005 (La. 2012).

[35] R. Doc. 111.

breach-of-contract claim related to the RESA for actions that occurred before Federated assigned its rights to Plaintiff; (2) by entering into the "as is, where is" act of cash sale, Plaintiff waived its right to rely on any prior written or oral representations or warranties; and (3) the removed items identified by Plaintiff were not "fixtures," but equipment.[36] In reply, Plaintiff argues that (A) Defendants' breach of the RESA and their torts arose from wrongful acts or omissions occurring after the assignment; (B) the act of cash sale included the sale of the fixtures as component parts of the immovable; (C) the "as is, where is" clause referred to the condition, not the composition, of the property; and (D) Defendants' description of the fixtures as equipment, not component parts, is incorrect.[37]

Defendants move for summary judgment on all of Plaintiff's claims, arguing that (i) Plaintiff lacks standing to bring claims under the RESA that arose prior to Federated's assignment to Plaintiff; (ii) Plaintiff has no actionable breach-of-contract claim under either the RESA or the cash sale agreement; (iii) Plaintiff failed to plead fraud with particularity and cannot sustain or otherwise prove any such claim; and (iv) Plaintiff has no right to bring a LUTPA claim.[38] Plaintiff, in opposition, argues that (a) it has standing because the date of Federated's assignment is immaterial; (b) the RESA is relevant and applicable despite the subsequent cash sale; (c) Defendants breached the act of cash sale by removing the fixtures; and (d) Defendants committed fraud and LUTPA violations by inducing Plaintiff to buy the property when Defendants always knew they were going to remove the fixtures prior to the sale, and these torts are fraught with fact issues unsuited to summary judgment at this stage.[39] In reply, Defendants argue that Plaintiff has

---

[36] R. Doc. 134.
[37] R. Doc. 143.
[38] R. Doc. 117.
[39] R. Doc. 132.

not put forth any evidence to refute the undisputed facts showing that Plaintiff lacks standing and cannot prove its claims.[40]

Having considered the parties' memoranda, the record, and the applicable law, the Court finds that both sides have identified genuine disputes of material fact – particularly relating to Plaintiff's standing, the nature of the items removed from the property, and Defendants' allegedly tortious actions and their timing – citing and supplying sufficient supporting evidence at this juncture to preclude summary judgment. Further, because this is a bench trial (with the jury demand stricken), the Court can better sort through all of the issues after a full presentation of testimony and evidence. Thus, the parties' cross-motions for summary judgment are both denied.

### C. Defendants' Motions *In Limine*

Defendants filed two motions *in limine* seeking to exclude Plaintiff's experts Jack Eglé (commercial real estate) and Robbie Poche (damages).[41] Eglé, who has more than 20 years of experience in real estate, offers opinions as to what, in his experience, constitutes fixtures that a buyer would expect to stay with a property.[42] Defendants argue that Eglé's opinions constitute legal conclusions and that he is unqualified to render these opinions because he has no technical or specialized education, has not published a paper on the subject, and has not been accepted as an expert in any other case.[43] In opposition, Plaintiff contends that Eglé's experience in commercial real estate qualifies him to testify as to the parties' expectations when entering into the transaction and that such testimony does not amount to legal conclusions concerning the definition of "fixture."[44] In reply, Defendants argue that Eglé's opinions regarding "expectations" conflict with

---

[40] R. Doc. 145.
[41] R. Docs. 113; 115.
[42] R. Dos. 113-1 at 14-16.
[43] *Id.* at 1-12.
[44] R. Doc. 133 at 1-11.

the legal definition of fixture, Plaintiff will attempt to use Eglé to introduce impermissible parol evidence regarding contract interpretation, Eglé's expected testimony is generally irrelevant and unhelpful, and Eglé is not qualified to be an expert witness.[45]

Poche, who has more than 15 years of experience as an insurance adjustor, used Xactimate to estimate the value of the items Defendants removed from the property.[46] Defendants argue that Poche's estimate is unreliable and inadmissible because he failed to apply depreciation.[47] Plaintiff responds that Poche's testimony is relevant, reliable, and based on an accepted methodology.[48] Further, Plaintiff argues that the alleged inaccuracies in Poche's calculations go to the weight, not admissibility, of his testimony.[49] Defendants reply, reurging their argument that Poche's estimate fails to account for depreciation and arguing that Poche does not account for other causes of loss, such as Hurricane Ida and vandalism.[50]

Having weighed Eglé's and Poche's reports and qualifications against the arguments presented, the Court finds that Eglé's education and experience qualify him to render the opinions expressed regarding the expectations of parties to a commercial real estate contract. Those opinions are relevant and reliable. However, Eglé may not offer any opinions as to ultimate factual or legal conclusions. Plaintiff says that Eglé will not offer such opinions. These matters are reserved to the Court, and the Court will entertain contemporaneous objections at trial to any attempt to solicit a legal opinion from Eglé. *Grand Isle Shipyards, Inc. v. Black Elk Energy Offshore Operations, LLC*, 2021 WL 535837, at *3 (E.D. La. Feb. 12, 2021) (stating that because an expert's opinion on the legal conclusions to be drawn from the evidence invades the court's

---

[45] R. Doc. 142.
[46] R. Doc. 115-2 at 1-15.
[47] R. Doc. 115-1 at 1-11.
[48] R. Doc. 135 at 1-7.
[49] *Id.* at 7-11.
[50] R. Doc. 137.

province and is irrelevant, it is inappropriate for an expert to opine as to legal conclusions, even in a bench trial). Similarly, Poche's experience qualifies him to render a damage estimate, and Defendants' concerns with his opinions can be addressed through vigorous cross-examination and the presentation of countervailing expert testimony. Again, in what will be a bench trial, the Court is capable of sifting a valid expert opinion from an impermissible legal conclusion and evaluating the merits and shortcomings of each expert's testimony. *See Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (observing that "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury"). Thus, both of Defendants' motions *in limine* are denied.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to strike Plaintiff's jury demand (R. Doc. 107) is GRANTED, and the trial of this matter will commence before the Court on **December 9, 2024, at 9:00 a.m.,** *without* **a jury.**

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment (R. Doc. 111) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (R. Doc. 117) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion *in limine* to exclude Eglé (R. Doc. 113) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion *in limine* to exclude Poche (R. Doc. 115) is DENIED.

New Orleans, Louisiana, this 31st day of October, 2024.

                                                           BARRY W. ASHE
                                                           UNITED STATES DISTRICT JUDGE