UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMOTHERED COVERED, LLC | CIVIL ACTION |
| VERSUS | NO. 22-5132 |
| WH CAPITAL, L.L.C., *et al.* | SECTION M (5) |

### ORDER & REASONS

Before the Court is the motion of plaintiff Smothered Covered, LLC ("Smothered Covered") to tax costs and attorney's fees.[1] Defendant WH Capital, L.L.C. ("WH Capital") responds in opposition,[2] and Smothered Covered replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons fixing the amount of attorney's fees and costs awarded to Smothered Covered in the total amount of $327,449.67.

I.   BACKGROUND[4]

This case concerns a commercial real estate transaction gone awry. The property at issue – 2924 and 2940 Elysian Fields Avenue, New Orleans, Louisiana (the "Elysian Fields Property") – operated as a Waffle House restaurant from June 11, 2013, until it was closed on March 31, 2020.[5] On August 9, 2021, Waffle House, Inc. ("Waffle House") and non-party Federated Historic

---

[1] R. Doc. 218. The motion is supported by three attorney declarations, billing records, invoices, checks, and the case docket, all attached to the motion. In its June 17, 2025 Findings of Fact & Conclusions of Law, the Court directed Smothered Covered to file a motion addressing the question of attorney's fees and costs. R. Doc. 211 at 62; *Smothered Covered, L.L.C. v. WH Cap., L.L.C.*, 2025 WL 1697124, at *30 (E.D. La. June 17, 2025).

[2] R. Doc. 260. WH Capital separately files three declarations and exhibits, requesting that the Court seal certain portions of these documents. R. Docs. 264; 265.

[3] R. Doc. 266.

[4] A more complete recitation of the facts can be found in this Court's Findings of Fact & Conclusions of Law. R. Doc. 211; *Smothered Covered,* 2025 WL 1697124.

[5] R. Doc. 211 at 5; *Smothered Covered*, 2025 WL 1697124, at *2-3.

1

Holdings, L.L.C. ("Federated"), Smothered Covered's predecessor-in-interest, entered into the original Real Estate Sales Agreement for Federated to buy the Elysian Fields Property and its improvements and fixtures, which agreement was amended several times, including one amendment reflecting that WH Capital was the correct owner (seller) of the property (collectively, the "RESA").[6]

When the RESA was signed, Waffle House had not completed what it calls the "deidentification" process on the Elysian Fields Property, whereby a wholly-owned subsidiary of Waffle House (*viz.,* Lavista Equipment Supply, Inc.) removes items from a decommissioned building it deems to be its "equipment" used to operate the building as a Waffle House restaurant.[7] Before deidentification, the building on the Elysian Fields Property contained, among other items, globe light fixtures; stools bolted into the flooring; high, mid, and low bars or counters affixed to cabinetry; backbar counters; seating booths affixed to cabinetry; commercial kitchen sinks; and a commercial kitchen exhaust hood (collectively, the "Subject Items").[8]

Throughout all of its amendments, the RESA stated that it concerned the sale of "the real estate, including all improvements and fixtures thereon, together with all easements, rights of way, licenses, privileges, hereditaments, and appurtenances, if any, inuring to the benefit of such land, located in the State of Louisiana, County [*sic*] of Orleans, and more particularly described in Exhibit 'A', generally described with a municipal address of 2924 and 2940 Elysian Fields Avenue, New Orleans, LA 70122, containing the entirety of the improvements located on approximately 18,916 SF of land (the 'Property')."[9] Section 10(g) of Exhibit B attached to the

---

[6] R. Doc. 211 at 12-17, 31-32; *Smothered Covered*, 2025 WL 1697124, at *6-9, *15-16.
[7] R. Doc. 211 at 8, 12; *Smothered Covered*, 2025 WL 1697124, at *4, *6.
[8] R. Doc. 211 at 13; *Smothered Covered*, 2025 WL 1697124, at *6.
[9] R. Doc. 211 at 12; *Smothered Covered*, 2025 WL 1697124, at *6.

RESA defined "fixtures" to "include 'component parts' as the term is used in Louisiana law."[10] According to WH Capital, it did not agree, or intend, to sell any of its "equipment" (including the Subject Items) as part of the sale of the Elysian Fields Property, which it urged in this litigation were not component parts of the building.[11] Smothered Covered, on the other hand, believed that the Subject Items were fixtures or component parts that would be conveyed with the sale.[12] At no time before the closing did WH Capital apprise Smothered Covered that it understood the term "equipment" to include the Subject Items.[13]

On February 1, 2022, WH Capital notified Federated that it was removing its "equipment" from the Elysian Fields Property.[14] WH Capital removed the Subject Items from the Elysian Fields Property the next day.[15] No representative of Federated inspected the property between February 2, 2022, and the close of the inspection period on February 14, 2022,[16] but Federated had inspected the property on August 17, 2021, and a potential lessee and contractors had done so in October and November of 2021, when the Subject Items were in place.[17]

On March 15, 2022, Federated assigned and transferred to Smothered Covered, a related entity, its rights, title, and interest under the RESA.[18] That same day, Smothered Covered asked WH Capital for access to inspect the property, but the access code provided did not work.[19] On the next day, March 16, 2022, Smothered Covered and WH Capital closed on the sale with the execution of an act of cash sale.[20] When Smothered Covered took possession of the Elysian Fields

---

[10] R. Doc. 211 at 12; *Smothered Covered*, 2025 WL 1697124, at *6.
[11] R. Doc. 211 at 13; *Smothered Covered*, 2025 WL 1697124, at *6.
[12] R. Doc. 211 at 13; *Smothered Covered*, 2025 WL 1697124, at *6.
[13] R. Doc. 211 at 27; *Smothered Covered*, 2025 WL 1697124, at *13.
[14] R. Doc. 211 at 26-27; *Smothered Covered*, 2025 WL 1697124, at *13-14.
[15] R. Doc. 211 at 27-31; *Smothered Covered*, 2025 WL 1697124, at *14-15.
[16] R. Doc. 211 at 27; *Smothered Covered*, 2025 WL 1697124, at *14.
[17] R. Doc. 211 at 20-21; *Smothered Covered*, 2025 WL 1697124, at *10-11.
[18] R. Doc. 211 at 35; *Smothered Covered*, 2025 WL 1697124, at *17.
[19] R. Doc. 211 at 33-34; *Smothered Covered*, 2025 WL 1697124, at *16-17.
[20] R. Doc. 211 at 35-37; *Smothered Covered*, 2025 WL 1697124, at *17-18.

Property, and accessed the building, it discovered that WH Capital had removed the Subject Items, *i.e.*, the items WH Capital labels "equipment," but which Smothered Covered considers "component parts."[21]

On November 3, 2022, Smothered Covered filed this suit in state court against Waffle House,[22] alleging that the removal of the Subject Items constituted a breach of contract, fraud, and violation of the Louisiana Unfair Trade Practices Act ("LUTPA").[23] Waffle House removed the suit to this Court, invoking diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.[24] Smothered Covered then filed an amended complaint, adding WH Capital as a defendant and asserting the same claims.[25]

The matter was tried before the Court, sitting without a jury, over five days.[26] After considering the evidence admitted at trial, the arguments and submissions of counsel, and the applicable law, the Court issued its Findings of Fact & Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.[27] The Court held that the Subject Items were component parts of the building under Louisiana Civil Code article 466 and, consequently, that WH Capital breached the RESA and the act of cash sale by delivering the Elysian Fields Property to Smothered Covered without the Subject Items.[28] The Court awarded Smothered Covered damages in the total amount of $167,295.31, consisting of $126,272.43 to replace the Subject Items at their current market price and $41,022.88 to repair the damage to the building caused by their removal.[29]

---

[21] R. Doc. 211 at 27, 37; *Smothered Covered*, 2025 WL 1697124, at *14, *18.
[22] Smothered Covered's claims against Waffle House were eventually dismissed with prejudice. R. Doc. 211 at 41-42, 50-53; *Smothered Covered*, 2025 WL 1697124, at *20, *25-26.
[23] R. Doc. 1-1 at 4-6.
[24] R. Doc. 1 at 1.
[25] R. Doc. 14 at 1-6.
[26] R. Doc. 211 at 1; *Smothered Covered*, 2025 WL 1697124, at *1.
[27] R. Doc. 211 at 1; *Smothered Covered*, 2025 WL 1697124, at *1.
[28] R. Doc. 211 at 41-50; *Smothered Covered*, 2025 WL 1697124, at *20-25.
[29] R. Doc. 211 at 53-60; *Smothered Covered*, 2025 WL 1697124, at *26-29.

However, the Court denied Smothered Covered's claim for lost profits, finding it to be too speculative, and dismissed with prejudice Smothered Covered's fraud and LUTPA claims.[30] Finally, the Court awarded to Smothered Covered attorney's fees, expert witness fees, fees for other professional services, and court costs, as provided by contract, in amounts to be set on post-trial motions.[31]

## II. LAW & ANALYSIS

### A. Smothered Covered's Request for Attorney's Fees

Smothered Covered seeks to have the Court fix the amount of attorney's fees and costs it is entitled to recover. WH Capital opposes the amount of fees requested by Smothered Covered, arguing broadly that the total amount is excessive, depends on unreasonable and unsupported hourly rates, contains duplicative work, reflects a lack of billing judgment, and is disproportionate to Smothered Covered's relative success.[32] In evaluating the reasonableness of Smothered Covered's request for attorney's fees, the Court will first determine the "lodestar" and then consider whether an upward or downward adjustment is warranted.

In calculating the lodestar, a court must determine the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). As the party requesting fees, Smothered Covered bears the burden of establishing the reasonableness of the fees it requests by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat,*

---

[30] R. Doc. 211 at 50-53, 60-61; *Smothered Covered*, 2025 WL 1697124, at *25-26, *29-30.
[31] R. Doc. 211 at 16, 61; *Smothered Covered*, 2025 WL 1697124, at *8, *30.
[32] R. Doc. 260.

*LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012). "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections." *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). The lodestar determination is presumed reasonable, but it may be adjusted upward or downward depending on the weight a court assigns to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[33]

Smothered Covered requests $347,047.50 in attorney's fees, plus an additional $33,438.47 in litigation costs and expert fees, for a total fee-and-cost award of $380,485.97.[34] During the course of this litigation, Smothered Covered was represented by Taylor Wellons Politz & Duhe, LLC ("Taylor Wellons"). Taylor Wellons attorneys logged 940.9 hours working on this matter

---

[33] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. However, the Supreme Court and Fifth Circuit have stated that several of the *Johnson* factors – namely, the complexity of the issues, the results obtained, the special skill and experience of counsel, and the preclusion of other employment – are fully reflected and subsumed in the lodestar amount. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993).
   Fifth Circuit precedent indicates that "a fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case," which in this case was Louisiana – rather than federal – law. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "In Louisiana, the amount of an attorneys'-fees award is governed by Rule 1.5 of the Rules of Professional Conduct." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *State Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 442 n.9 (La. 1992)). The Louisiana supreme court has derived ten factors (the "*Williamson* factors") from Rule 1.5 that courts applying Louisiana law must consider to determine the reasonableness of attorney's fees: "(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge." *Williamson*, 597 So. 2d at 442. The *Williamson* factors, however, "are very similar to those used in the federal 'lodestar' method as set out in *Johnson*." *Chevron USA*, 689 F.3d at 505. Because the parties here briefed the issue using the federal lodestar framework, applying "factors essentially identical to those required by Louisiana law," *id.* at 506, the Court will likewise use the federal lodestar framework to determine the reasonableness of Smothered Covered's request for attorney's fees.
[34] R. Doc. 218-1 at 2.

6

between November 2022 and March 2025.[35] In what it claims to be the exercise of billing judgment, Taylor Wellons acted to keep its billings down, ahead of any need to "write off" its bills, by using an associate rather than a partner to handle certain discovery issues (*e.g.,* challenges to experts), parceling the work so that it was handled more efficiently (*e.g.,* using primarily one attorney to handle depositions and exchanges with defense counsel and another to handle motion practice and brief-writing), and assigning many paralegal tasks to non-billing legal assistants.[36]

In support of the requested amounts, Smothered Covered submits the declarations of its attorneys,[37] along with detailed billing records, which include summaries of the fees and costs it incurred in connection with the case.[38] According to the declarations and billing records, Smothered Covered seeks to recover for services performed by three Taylor Wellons attorneys: Jared A. Davidson, a partner with 15 years of legal experience at the time of trial, who was billed at a rate of $375 per hour; Caroline M. Murley, a partner with nine years of legal experience at the time of trial, who was billed at a rate of $375 per hour; and Nicholas A. Hart, an associate with just over a year of legal experience at the time of trial, who was billed at a rate of $300 per hour.[39]

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Martinez v. Refinery Terminal Fire Co.*, 2016 WL 4594945, at *7 (S.D. Tex. Sep. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328). Here, WH Capital contests the billing rates of Smothered Covered's lawyers, taking issue with the adequacy of the attorney declarations submitted in support of the rates, the lack of any other supporting evidence,

---

[35] R. Docs. 218-3; 266 at 1.
[36] R. Docs. 218-1 at 7-8; 218-2 at 3; 218-5 at 3; 266 at 4-5.
[37] R. Docs. 218-2; 218-4; 218-5.
[38] R. Doc. 218-3.
[39] R. Doc. 218-1 at 4; 260 at 4-5.

and the excessiveness of the requested rates in light of certain case law and the rates employed by WH Capital's own lawyers in this case.[40] While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (observing that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Quibbling over the nature and degree of the Taylor Wellons attorneys' legal experience, WH Capital asks that the Court set the hourly rates of Smothered Covered's attorneys in this case as $225 for Mr. Davidson, $205 for Ms. Murley, and $185 for Mr. Hart.[41] WH Capital argues that the Taylor Wellons attorneys' declarations are "conclusory, unsupported, *ipso facto* and self-serving" and, as such, should be disregarded.[42] In fact, however, the declarations expressly state that they are made on personal knowledge, that "[t]he hourly rates charged are based upon [the attorneys'] experience, training, background and knowledge," and, most importantly, reflect each attorney's "standard hourly rate."[43] As WH Capital itself recognizes, "'[i]f an attorney's customary billing rate is the requested rate and is within the range of prevailing market rates, it is *prima facie* reasonable.'"[44] Given counsel's representation that the requested rates are the firm's

---

[40] R. Doc. 260 at 4-12.
[41] *Id.* at 12.
[42] *Id.* at 5.
[43] R. Docs. 218-2 at 2; 218-4 at 1; 218-5 at 2; 260 at 12.
[44] R. Doc. 260 at 4 (quoting *Pembroke v. Wood Cnty.,* 16 F.3d 1214, 1994 WL 57292, at *3 (5th Cir. Feb. 10, 1994)).

standard hourly rates, the remaining question is whether such rates fall within the range of prevailing market rates. "As recognized by … this Court, 'prevailing market rates in this community generally range from $200 to $400 per hour depending on the attorney's level of experience." *MGMTL, L.L.C. v. Strategic Tech. Inst., Inc.,* 776 F. Supp. 3d 419, 446 (E.D. La. 2025) (quoting *Nelson v. Constant,* 2021 WL 76407, at *3 (E.D. La. Jan. 8, 2021) (collecting cases)). The Court is satisfied that the hourly rate of Mr. Davidson falls within the range of rates allowed by other courts in this district for roughly equivalent experience, but not those of Ms. Murley and Mr. Hart. *See, e.g.*, *Archer W. Contractors, L.C.C. v. McDonnel Grp., L.L.C.,* 2025 WL 2088911, at *4-6 (E.D. La. July 9, 2025) (finding hourly rates of $455 for attorney with 36 years of experience, $345 for attorney with 30 years of experience, $280 for attorney with 8 years of practice, and $240 for attorney with 4 years of practice to be reasonable); *MGMTL,* 776 F. Supp. 3d at 480-81 (finding hourly rates of $275 for attorney with 11 years of experience and $200 for attorney with 0-3 years of experience to be reasonable); *LaShip, L.L.C. v. Jamestown Metal & Marine Sales, Inc.,* 2025 WL 1370441, at *2 (E.D. La. May 12, 2025) (finding hourly rates of $370 for partner with 12 years of experience and $300 for associate with 7 years of experience to be reasonable); *Grant v. Gusman,* 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023) (finding hourly rates of $275 for an attorney with 11 years of experience and $200 for associates with up to 4 years of experience to be reasonable); *Kenai Ironclad Corp. v. CP Marine Servs., LLC,* 2022 WL 3223990, at *4 (E.D. La. July 21, 2022) (finding hourly rate of $290 for attorney with 14 years of experience to be reasonable); *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.,* 2021 WL 5833967, at *4-5 (E.D. La. Dec. 9, 2021) (finding hourly rates of $350 for partner with between 13 and 16 years of experience to be reasonable); *M C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (finding hourly rates of $350 for

partner/member with over 17 years of experience and $225 for associate with approximately 3 years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (finding hourly rates of $300 for partners and $225 for associates to be within the customary range of rates in the New Orleans area). But, in light of the foregoing authorities, the Court also finds that the rates WH Capital suggests are too low for this case. Accordingly, the Court fixes the reasonable hourly rates of Smothered Covered's attorneys for purposes of this case as $375 for Mr. Davidson, $325 for Ms. Murley, and $210 for Mr. Hart.

As for the time expended, the Court is generally satisfied that the time entries in the billing records reflect a sufficient level of detail and description about the number of hours charged and the nature of the services rendered as to support the conclusion that the bulk of the hours were reasonably expended and the services reasonably rendered. Nevertheless, "[t]he [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (internal citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment. *Id.*; *Kellstrom*, 50 F.3d at 324.

Here, Smothered Covered states that its lawyers exercised billing judgment to ensure that the fees were not excessive. It points to various techniques its lawyers employed to keep the fees low, and it responds to each instance in which WH Capital has said that Taylor Wellons' billings reflect duplicative entries across multiple timekeepers.[45] Having itself carefully reviewed the

---

[45] R. Docs. 266 at 5-7; 266-3 at 1-16.

billing records, as well as the parties' submissions concerning specific entries, the Court can largely confirm Smothered Covered's position concerning the hours it expended on the case. First, the Court agrees that the case was very "contentious," and that defense counsel, in vigorously defending his clients, drove up the amount of attorney time and expense Smothered Covered's attorneys necessarily had to devote to the case. Second, the Court disagrees with virtually all the objections WH Capital interposed and catalogued with respect to specific time entries and, instead, accepts Smothered Covered's explanation for the time logged for these tasks and its use of more than one attorney in discrete instances. WH Capital's list of objections do not reflect the customary way attorneys in this community (New Orleans) and practice area (commercial litigation) prepare and work their cases, including their review of documents ahead of filing a complaint, their drafting and reviewing pleadings and other documents, their review of documents in discovery, periodically holding conferences among the attorneys working the case to discuss strategy and assign tasks, and their attendance at depositions and trial. Given that WH Capital's counsel, in defending the case, wrote up well over twice the number of hours (2,164 attorney hours and 181.4 paralegal hours) than did Smothered Covered's attorneys, it is hard to imagine that WH Capital really believes its own claim that Smothered Covered's attorney hours were excessive. At bottom, the claim that the hours of Smothered Covered's attorneys were excessive and unreasonable is unpersuasive, as the defendants' own behavior throughout the litigation directly contributed to its protracted nature and duration. Thus, the Court finds that no reduction is warranted for the supposed duplicative billing, excessive hours, or lack of billing judgment WH Capital claims.

Multiplying the adjusted hourly rates by the hours of Smothered Covered's attorneys and then summing those amounts – ($375 x Mr. Davidson's 669.6 hours) + ($325 x Ms. Murley's

194.1 hours) + ($210 x Mr. Hart's 77.2 hours) = $330,394.50 – the Court finds that the lodestar for attorney's fees is $330,394.50.

WH Capital argues that the Court should reduce Smothered Covered's request for attorney's fees based on the *Johnson* factors since Smothered Covered had relatively limited success on its claims.[46] Specifically, WH Capital says that Smothered Covered sought $497,694.67 in damages and was awarded only $167,295.31, or about 33.6% of what it requested, as a result of the Court's dismissal of its claims for lost profits, bad-faith breach of contract, fraud, and LUPTA violations.[47] In response, Smothered Covered contends that "[i]f unsuccessful claims are unrelated to the successful ones those may be treated 'as if they had been raised in separate lawsuits and excluded from the fee award,' [b]ut when claims 'share a common core of facts or related legal theories, a fee applicant may claim all hours reasonably necessary to litigate those issues,' [and the 's]egregation of hours spent on different claims is not required when the claims are so intertwined that it is impossible to differentiate between them'"[48] And here, says Smothered Covered, because the factual underpinning of all the unsuccessful claims was essentially the same as that of the successful breach-of-contract claim, the unsuccessful claims are so "inextricably intertwined" with the successful claim as to call for no reduction in the requested fees for lack of success.[49] This position is exaggerated, if only slightly. Thus, the Court agrees that there should be some adjustment for Smothered Covered's lack of success on some of its claims, just not to the degree WH Capital suggests. That is because, in pressing its claims for breach of contract, Smothered Covered had to present nearly all the same evidence it urged as support for its failed

---

[46] R. Doc. 260 at 15-21.
[47] *Id.* at 15.
[48] R. Doc. 218-1 at 10 (emphasis omitted) (first quoting *Fessler v. Porcelana Corona de Mexico, S.A. DE C.V.,* 23 F.4th 408, 416 (5th Cir. 2022), and then quoting *Kellstrom,* 50 F.3d at 327, and then quoting *Randolph v. Dimension Films,* 634 F. Supp. 2d 779, 799 (S.D. Tex. 2009)).
[49] R. Doc. 218-1 at 11; 266 at 7-8.

claims. Nevertheless, because some of the attorney's fees requested were devoted to the pursuit of the failed claims, the Court finds that a downward adjustment roughly approximated at 10% is merited, thereby making the award for attorney's fees more in line with Smothered Covered's relative success. That the resulting amount exceeds the amount Smothered Covered recovered on its claims is of no moment because the award of attorney's fees in the Fifth Circuit is not governed by any rule of strict proportionality to the damages recovered. *See, e.g., Badon v. Berry's Reliable Res., L.L.C.,* 2025 WL 2206972, at *4 (5th Cir. Aug. 4, 2025) ("[W]hile 'proportionality is an appropriate consideration' in assessing fee awards, we have 'consistently emphasized that there is no *per se* requirement of proportionality in an award of attorney's fees." (internal citations and quotation marks omitted) (quoting *Gurule v. Land Guardian, Inc.,* 912 F.3d 252, 259 (5th Cir. 2018))). Accordingly, reducing the lodestar by 10%, the Court calculates the adjusted award to be $297,355.05 (or $330,394.50 - $33,039.45 = $297,355.05). With this reduction and having found that no additional adjustment is warranted by the other *Johnson* factors, the Court finds that the time spent by Smothered Covered's attorneys was expended in a good faith pursuit of value for their client, as opposed to churning, and therefore that this award of attorney's fees is both reasonable and appropriate to the case.

### B. Smothered Covered's Request for Costs

With respect to costs, Smothered Covered seeks $33,438.47 in litigation costs and expert fees.[50] WH Capital objects to virtually all these costs, stating the bases for its objections, and Smothered Covered provides a response to each.[51] The Court has carefully reviewed and weighed the parties' respective positions. In view of the contentious and prolix manner is which this case was litigated, the length and complexity of the case, the amounts involved, and Smothered

---

[50] R. Docs. 218-1 at 2.
[51] R. Doc. 266-4.

Covered's need to take steps to protect its right to require the attendance of witnesses for depositions and trial, its need to have its counsel appear in-person for out-of-town depositions, and its need to engage various outside experts to deal with the issues placed in dispute, the Court finds that the bulk of these costs were necessary and reasonable. Nevertheless, the Court also finds it appropriate to reduce the award of costs by the same 10% figure as for attorney's fees, given the relative success of Smothered Covered on its claims. Hence, the Court calculates the reduced award of costs to be in the amount of $30,094.62 (or $33,438.47 - $3,343.85 = $30,094.62).

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the amount of the attorney's fees and costs awarded to Smothered Covered is hereby fixed in the amount of $327,449.67 (or $297,355.05 + $30,094.62), which together with the $167,295.31 awarded Smothered Covered on its claims, as set forth in the Court's Findings of Fact & Conclusions of Law, makes for a total award of $494,744.98.

New Orleans, Louisiana, this 7th day of October, 2025.

                                                    BARRY W. ASHE
                                                    UNITED STATES DISTRICT JUDGE